Good afternoon. This is the time set for the argument in Velasquez-Perez v. Barr. I would say please be seated, but of course everybody already is. So, welcome, and we're sorry we can't do this in person, but we're glad to have this argument virtually. And Mr. Jobe, the floor is yours. Thank you, Your Honor. May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner. As the immigration judge pointed out in her decision, in Central America, extortion is the lifeblood of criminal gangs like MS-13. It's widespread, and it is systematic, but it's not random. MS-13 is described in the record as cold and calculating and strategic in choosing its targets, and also in deciding how much money to demand from its victims. Without a doubt, MS-13 bases its decisions about who to target and how much money to demand on its perception of the potential of the target's vulnerability and willingness to pay. If you look at page 337, for example, that describes how MS-13's demands vary based on the victim's perceived income. It says that perhaps a single woman with three kids selling tortillas might be expected to pay $15 a week, while a taxi driver with a wife and two kids might be expected to pay $100 a week. But in this case, MS-13 demanded a huge sum of money, the equivalent of $13,000. And Ms. Velasquez, she didn't question the gang's demand for the money, she questioned the amount. If you look at page 143 of the record, following the demand for the $100,000 quetzales, she goes on to say, I told him that was too much money. We didn't have that kind of money. I insisted that we can't pay. And when she kept insisting that she wasn't going to be able to make this sort of payment, the MS-13 member, the extortionist who had demanded this money, he said to her, in a very disrespectful way, he said, yes, you can. You have family in the United States, and therefore you are able to pay. Now, in front of the immigration judge, we argued that Ms. Velasquez belonged to a particular social group, Guatemalan women who have close family living abroad. And the Board of Immigration Appeals, at least, on appeal, it accepted that as a cognizable social group. But nevertheless, it went on to conclude that Ms. Velasquez had not demonstrated that her membership in that particular social group was a central reason for the persecution that she suffered. And in doing so, obviously, the board affirmed a finding of the immigration judge. But in that respect, it's our position that the immigration judge both misconstrued the one central reason standard and misapplied that. And I think the best example of how she misconstrued the standard, this is on page 97 of the record, where the immigration judge says, Respondent could meet the mixed motive central reason standard if she could establish that not only did the gang want to harm her if she didn't pay the extortion amount, but that they also wanted to harm her because she owned a business, had family in the U.S., or had a minor daughter. That is, that she would also have to show that the gang wanted to harm her because of her membership in a social group. Notwithstanding the fact that the gang initially selected her because of her membership in that particular social group, and notwithstanding the fact that the gang not only targeted her but set this exorbitant extortion demand based on her membership in that group, both the board and the immigration judge reasoned that because the ultimate aim of MS-13 was simply to obtain money, the fact that they had targeted her based on her membership in this particular social group, that was just a means to an end. And it can't satisfy the one central reason requirement. Now, in doing that, the judge starts her analysis by reviving Matter of Acosta's suggestion that by definition, persecution entails inflicting harm or suffering in order to punish someone for possessing a protected characteristic which the persecutor wishes to overcome. Obviously, that's not this circuit's definition of persecution. It's not even the board's definition of persecution because in Pitcher's SCIA, obviously this court rejected the notion that the persecutor has to have some intent to punish. And in Matter of Kasinga, the board itself rejected that notion. Now, this other part of the judge's definition of persecution that she's working with, this idea that the persecutor has to overcome this protected characteristic, yeah, there is language in Acosta and Matter of Mogherabi and Matter of Kasinga and a number of circuit court cases to that effect. But I've never – as far as I know, no case has ever been decided based on that language. And it obviously can't be applied to cases involving immutable characteristics like race. I mean if somebody is singled out and harmed, persecuted because of that person's race, the persecutor is not trying to overcome that person's race. In that sense, it's nonsensical. Mr. Jobe, can I ask – you've been more focused on the IJ order, but how about the BIA's decision? Where do you contend that the BIA erred in its analysis? Well, at this point, Your Honor, I think the BIA made the exact same mistake. Obviously, if the immigration judge applied an incorrect legal standard and didn't analyze the facts under that standard, the thing probably should have been sent back so the judge could analyze questions of motive in the first instance. But the BIA didn't do that. But in the BIA's decision, and this is on pages four and five, similar to the judge, the BIA recognizes that Ms. Velazquez's membership in this particular social group that I'm talking about, Guatemalan women who have close family abroad, may have raised her profile to gang members as someone who would likely be willing and able to comply with the ransom demand. So they understand that that may well have played a role in the initial targeting. But then they go on to say, and this is at the bottom of page five of the record, Your Honor, as we explained in the asylum analysis, there's no evidence in the record that gang members targeted this respondent because of her membership in one of these particular social groups. As an end in itself, they use the language as an end to themselves. But ultimately, that's what they're driving at, the fact, it seems to me, that it doesn't matter why she was singled out, if that was just a means to their ultimate goal of maximizing the amount of money that they might be able to extort. And that's just not consistent with the statutory language, because in order for us to meet the on-account of requirement, we simply have to show that Ms. Velazquez was persecuted because of her membership in a particular social group. And then the REAL ID Act makes clear that in order to meet that test, we have to show that she was or will be, that her membership in a particular social group was or will be at least one central reason for persecuting the applicant. Well, her persecution began when this gang member shows up, demands this exorbitant amount of money from her, threatens to kill her daughter if she doesn't pay this exorbitant amount of money. Clearly, her membership in this particular social group is one central reason for the visit, as well as the exorbitant amount of money that they were asking for. And if she doesn't pay that exorbitant amount of money, which is predicated on her being in this social group, the only reason they think that she could even pay that money is because she's part of this social group, the threat is then that they're going to harm her daughter. It seems to me nobody could come to the conclusion that this wasn't a central reason for the MS-13's persecuting of this particular petitioner. And in that respect, both the IAJ and the BIA heard. Thank you, Counsel. We'll give you some time for rebuttal. Thank you, Your Honor. Governor? Good afternoon. Alison Igo, representing the respondent. I agree with Mr. Jobe that MS-13 is a criminal gang. They exploit every aspect of Guatemalan society for financial benefits. They are really not discriminating in who they target, with the exception of wanting to target people from whom they can get money. And that's the issue in this case. The board found that they weren't targeting her because they disagreed with her status as a small business owner, or a female business, you know, who owned a small business, or a mother of a young child. What the board said was that that was, as Mr. Jobe recognized, a reason to raise her profile, but that they were targeting her solely for financial benefit. And it's interesting because I disagree with Mr. Jobe. The board most certainly did find, in a matter of Tsitsinga and in a matter of Acosta, the board said that one of the two significant aspects of the accepted construction of persecution is that the harm is inflicted, you know, based on a difference of opinion with a belief or a characteristic. And that construction was repeated by this court in a case called Hernandez-Ortiz, in which the court said persecution only occurs where there is a difference between the persecutor's views of the status, or rather, between the persecutor's views or status and his victim. It's oppression inflicted because of the difference that the persecutor will not tolerate. And that is very consistent with the INA. It's very consistent with the types of protections that it offers. Otherwise, anyone who is a victim of a crime, and of course, criminals target people for various reasons. They target them because they're easy victims. You know, anybody who watches daytime television where there are former criminals who are consulting will tell you, don't appear to be vulnerable when you walk outside. Don't appear to have money. When you travel abroad, don't take money out because you're targeted, because you're looked at as being a good victim. And that's what the MS-13 did in this case. They are not going to target people who don't have money to give them. And the only evidence in this case that even brought up her membership in one of these groups was when she said, I can't pay. And they said, yes, you can, you have people in the United States. A very large portion of the Guatemalan society is in the United States and sends remittances back. And in fact, in the record, there is evidence that a very large part of the Guatemalan GDP is absolutely dependent on remittances sent from the United States. So, of course, MS-13 and any other criminal gang knows that somebody who has someone working in the United States will have money. But the question here... Counsel, excuse me, this is Judge Schroeder. I just wanted to ask you a question. Would you say the same if they targeted Jews because they thought Jews were wealthy and had money? I would say that if that were the only reason. Because they're not differing with Jews on the basis of their identity as a Jew or their religion or their ethics or anything else. They're just saying that they're an educated part of society. They are known to be very educated and very successful. And therefore, they might be a good financial target. Yes, I would say the same thing. I would say the same thing about anyone who's being targeted just solely for the fact that they appear to have money. That's what criminals do. It's very efficient in the sense that they are looking for people that will financially benefit them. There is just no evidence in this record that MS-13 disagreed with her membership in any of these groups. In fact, they would not want to overcome her membership because, in effect, they would be killing the goose that laid the golden egg. Because that's what makes her a good target for them. Even though they define the targets in terms of a social group? Yes, certainly. And this court has found in other cases that the targeting of people because they have money is not necessarily persecution on account of that basis. Because why else? It would make every victim of a crime basically a member of a social group. If you are targeting older people because you think an older member of society that perhaps was in a certain business. They're vulnerable because they're older. They're vulnerable because they might have money. But you're targeting them for that reason because it doesn't make sense otherwise in terms of what criminals do. And there has to be some connection between the persecutor and the point of the INA and who you are looking to protect. And the best authority for that is where do we look where we'll see that best stated? What is that? For your proposition that even though they define the target in terms of a social group, if their motive is money, then it's not persecution. Well, this court has said over and over that extortion simply for extortion is not persecution. That it has to be on the basis of a particular social group. So just extortion by itself. But I'll turn to the board's definition of persecution. And they look back to the Refugee Act and they say it is this difference of opinion between the status or the ideas of the people. And you see this in religion. You know, it's the difference in religion. And you do not agree with that person's religious, you know, following or politics. You disagree with that person's politics and you are looking to persecute them because you want to overcome that characteristic. In this case, you know, and there are situations where the court has found, and I believe it was, it might have been Cordova, although that is just a particular social group case. There are cases in which the court has said, where the group is defined as landowners, and they said there has been, you know, a history of difficulty between wealthy landowners and the rest of the population. And the rest of the population, and that would have been, I think you've lost my video, but that would have been, you know, a reason for targeting them because of this historical tension between the groups, not because they have money. And in this case, there is no evidence that MS-13 really cared, other than the fact that they thought her status in those groups gave her money. There's no evidence that they cared about her leaving that group, changing her idea in that group, in those groups, you know, or that they even had a difference of opinion with her. She said that they came in and they bought things in her store. At one point, they said to her, oh, you're doing very well. They didn't seem to really care about her status or about her, you know, any difference of opinion here, except for the fact that they knew she had money. And Mr. Jobe argues, you know, all of the legal, but he hasn't pointed to, with the exception of that one comment that the person made to her when she said, I can't pay, I don't have money. And he said, I know you do, you have family in the U.S. That is the only evidence. There's nothing in her declaration in which she says they commented on her status, and there's nothing in the rest of her testimony to indicate that they were at all interested, other than the fact that that status gave her the means to meet their extortion demand. If the court has no other questions, I would just rest. Mr. Jobe did not address the Convention Against Torture issue, so I will rest on the brief in that case, and I ask the court to deny the petition. Very well. Rebuttal will give you two minutes, Mr. Jobe. Thank you, Your Honor. I certainly did not expect the government to come in and concede that if a criminal organization, or even a government, seeks to extort money and does so by way of profiling and using protected characteristics like race or religion as the basis of its targeting its victims, that that would somehow not concede. That would not constitute a central reason for persecuting the applicant. That's just an untenable result. It's patently inconsistent with the statutory language, which simply, again, requires that the protected characteristic was or will be at least one central reason for persecuting the applicant. If the person is specifically chosen because of that person's protected characteristic, I don't see how anybody could even argue that it doesn't meet the test. The government has to come back and make these arguments about using this definition, you know, for matter of a cause of persecution. That definition, again, it predates the Refugee Act, and it stems from a case called Matter of Diaz that was interpreting the phrase physical persecution. The statute that was being interpreted there is the old 243H. That statute did not have any language about on account of or nexus. The only term in the statute that had to be defined was physical persecution, and as a result, the agencies had to develop their own test for nexus. We don't have to do that here. We have statutory language interpreted by the Supreme Court and Elias Zacharias that tells us what it means. It simply means because of, and to be because of, it has to constitute a central reason for the persecution. Thank you, counsel, for your arguments. The case, just argued, will be submitted for decision, and we will be in recess. Thank you, Your Honor.
judges: Thomas, Schroeder, Bress